## Peoples National Bank and E. J. Larkins, Appellants, v. Henry Lenz, to use of The Farmers Deposit National Bank.

*Judgment—Confession of judgment—Fraud—Feigned issue—Review.*

The Supreme Court will not reverse a judgment on a verdict for the defendant in a feigned issue to determine whether a confessed judgment is fraudulent or not, where there was a serious conflict of testimony which involved the credibility of witnesses, and the trial judge stated fairly what the controverted testimony was and left its determination to the jury.

Argued Nov. 2, 1899. Appeal, No. 186, Oct. T., 1899, by plaintiffs, from judgment of C. P. No. 1, Allegheny Co., March T., 1898, No. 2, on verdict for defendant. Before GREEN, McCOLLUM, MITCHELL, FELL and BROWN, JJ. Affirmed.

Feigned issue to determine the validity of a judgment confessed by George Loeffert and John Loeffert, individually, and

also as a firm doing business as George Loeffert & Son. Before SLAGLE, J.

At the trial it appeared that this judgment was for $3,277.38, and had been assigned to the Farmers Deposit National Bank, the use defendant in this issue; that plaintiffs are judgment creditors of George Loeffert & Son, junior to the judgment in issue; that Henry Lenz, the plaintiff in the judgment, is the father-in-law of John Loeffert. It was contended by defendant that the judgment confessed to Lenz was fraudulent for two reasons:. first, because it was confessed for moneys that were not due to Lenz; second, because it was part of a scheme devised by John Loeffert to cheat and defraud the creditors of George Loeffert & Son.

Other facts appear from the following portion of the charge of the court:

Fraud is never presumed. It must be proved, and it must be proved in a satisfactory manner. It is not necessary, as it is almost always impossible, to bring direct and positive proof of the fraud by the admission of the parties. It is generally to be established by the circumstances surrounding the transaction, and that may be as clear and convincing as positive evidence. You start with the proposition that the judgment attacked is a valid and an honest judgment, and the presumption being that way, it must be overcome by the evidence in the case. There is another matter that must be considered in the first instance, which runs all through the case, and that is this: it is not fraudulent for a debtor to prefer one of his creditors. The creditors have no absolute rights to a preference, or to an equal distribution, in the absence of a bankrupt law. The bankrupt laws are passed for the purpose of securing an equal division among creditors of an insolvent debtor; but, aside from that, there is nothing in the law to prevent a debtor from preferring any one of his creditors and giving him superior rights. Therefore, there is nothing that would be fraudulent in that creditor in accepting. That not being unlawful, it would not be fraudulent for a party to say to a creditor, especially an accommodation creditor, "If anything happens to me I will give you a preference," because the preference not being illegal, the party would have a right to say, "I will see that you are protected." There

was no bankrupt law in existence at the time that these transactions occurred; I assume that the jury would know that. Commencing then with these propositions, the assumption is that this judgment was valid, and we then come down to a consideration of the questions arising under the evidence, as to the validity of the judgment. As said in the first place, it is alleged that it was confessed for a sum largely in excess of what was actually due to Mr. Lenz. In reference to that, it appears that there was very little, if any, actually due by the firm of George Loeffert & Son to Henry Lenz; that is, for money actually advanced by him; but he was liable, and admittedly liable, on a large amount of indorsements of promissory notes, which he had given for the accommodation of this firm. That was a liability which the debtors had a right to protect, if they chose, and, therefore, any liability upon indorsements of notes by Lenz, outstanding at the time that this judgment was confessed, would be a valid consideration for the judgment, just as if he had actually paid the money. They could protect him against his indorsements by the confession of judgment, and that would not be fraudulent.

It is alleged that the judgment was confessed for a large amount in excess of the actual liability, and right here I may say, that most of the controversy as to positive facts lies between the statement of Mr. Deise, a witness for the plaintiff, on one side, and Mr. Lenz and Mr. Wakefield on the other. Mr. Deise says that in January of 1896, the indebtedness of the firm to Lenz was about $13,000, if I remember right. I do not propose to go into the testimony at length, gentlemen, and any facts that I state will be simply to illustrate some of the propositions; without depending upon that alone you want to take all of the facts in the case and consider them, and I will not go over them. He says, however, that in April of 1896, there was a $10,000 note indorsed by Mr. Lenz. Whether he stated he got the money on that I do not remember. However, he further says, that about the time of this failure there was a large number of entries made on the books, and that they were made at the instance of Mr. Wakefield, the attorney for Loeffert, and who afterwards became the attorney for Lenz. The intimation, if not the assertion, was made by Mr. Deise, that this judgment in excess of that amount, was without any consideration what-

ever. If this were true, if you would find from the evidence
that a large amount of this judgment was without consideration,
it would be strong, if not conclusive evidence, that it was a
fraudulent transaction. But the testimony on the other hand,
on the part of the defendant, is, that this judgment included
not only the $13,000 or thereabouts which was due in January,
but included also this $10,000, and that, all told, the liabilities
to Mr. Lenz at that time were about thirty odd thousand dollars;
that when they came to carry out the transaction, there was
some notes held by the Farmers Deposit National Bank amount-
ing to $8,830, which the bank insisted should be protected;
that Mr. Lenz agreed to give his note for those obligations, and
did so, and included that amount in this judgment. Now there
is nothing in that, itself, that is fraudulent. Mr. Lenz had a
right, if he choose, to assume any obligation to any person else,
voluntary, or because of some danger to his son-in-law, Loeffert.
Whatever the motive would be, if he took that paper upon him-
self, there would be nothing fraudulent in including that in a
judgment that he was about taking for the other indebtedness
to him.

The defendant claims that the amount of this judgment was
the actual amount of the notes for which Mr. Lenz was liable;
for certain notes which he held, signed by John Loeffert, and
for a couple of checks that he says he had given him the money
for, and this $8,830; and I may say, that the defendant has
produced written evidence to a large amount of these claims.
As I said, the testimony that the judgment included anything
more than the indebtedness of these parties to Lenz depends
largely, if not solely, upon the testimony of Mr. Deise; and the
testimony of the defendant is corroborated largely by papers, as
to the actual indebtedness and liability then existing. There
was included in the amount, the notes of John Loeffert, amount-
ing to about $3,450, I believe, which were held at the time by
Mr. Lenz. It is claimed that they had no right to include that in
the judgment, it not being a debt of George Loeffert & Son.
But in reference to them the allegation was, and so testified,
that, though the notes were made by John Loeffert, the money
went to George Leoffert & Son, and therefore, without regard
to the form of the note, if the money was borrowed by him for
the firm, it would be a firm debt, and there could be no question

as to that if it was a firm debt. There was also included in the
judgment $2,500, which Lenz claimed he had paid for John
Loeffert, individually, in a building and loan association, and
that, of course, would not be a firm debt. But, there would be
no fraud in including in a firm judgment, or in a judgment such
as this, which was not only a firm, but an individual judgment
against the parties, there would be nothing fraudulent, neces-
sarily fraudulent, in including individual liabilities, because the
judgment was confessed by George Loeffert & Son, and also by
George Loeffert and John Leoffert as individuals. It was on
its face, a partnership and an individual judgment, and, there-
fore, it would probably be natural that they would put in all of
their liabilities ; but if the partners choose to put in a partner-
ship judgment, a claim that was only an individual claim, I do
not see that that would be necessarily fraudulent. It might be
a fact which would be considered in connection with other facts,
tending to show the fraudulent character of the transaction.
So that, in this case, if you believe that these amounts were
actually due to Lenz, or the amounts for which he was liable,
and that the judgment was entered for the actual amount of
indebtedness and liability, then there would be nothing to effect
the validity of this transaction upon that ground. If, however,
you find under the whole evidence that the judgment was con-
fessed for more than was actually due, it would be very strong
evidence of an intentional fraud. It would be fraudulent, of
course, because it would be an attempt to take something that
the party was not entitled to, and, if intended, it would be an
actual fraud and would destroy the effect of the entire transac-
tion. But the plaintiff alleges that this judgment was fraud-
ulent for another reason. He says that John Leoffert, who
was the managing partner of the firm of George Loeffert & Son,
had, for some time prior to the confession of this judgment,
devised a scheme by which he would get a large amount of
property into his hands, upon credit, and that he then would
confess a judgment to Lenz, have it sold out at sheriff's sale,
and thus defeat the just claims of the creditors who had trusted
him. This, again, depends largely upon the testimony of Mr.
Deise. It may be that the books and papers which he presented
sustain him, corroborate his statements, and that you will con-
sider. The fact that John Loeffert had bought a large amount

of materials, that he had erected a mill upon property that was actually owned by a third party, spending a considerable amount of money in so doing, and that he had made misrepresentations to persons from whom he bought as to the standing of the firm, would be very strong evidence of his intention to commit a fraud.

It seems that he was tried and convicted for obtaining money under false pretense, or property under false pretense, from some of these parties. Just what the facts in that case were you do not know; they were not disclosed, but it appears by the testimony of Mr. Deise that there was a statement made of the condition of the firm, which was changed by Loeffert by inserting certain figures that largely increased the assets of the firm, and that that was used in the banks, and also in dealing with persons who were selling them lumber. The counsel for the defendant here did not attempt to claim that John Loeffert had not committed a fraud in that business. Loeffert, himself, says that he thought he would be able to carry the business through to a success; he says, that even when he got the $10,000 indorsement in April, he still believed he was able to carry on the business. Mr. Lenz says he so represented to him, but Deise says, and the facts would seem to carry it out, that John Loeffert had some scheme in his mind by which he would get a large amount of property upon credit, and Deise says that a part of that scheme was then that he would confess judgment to Lenz for a large amount of money, and have it sold out upon a judgment of that sort.

Now here is another place in which you must be careful. It is not sufficient to defeat this judgment of the defendant, to show that John Loeffert had devised a scheme to cheat his creditors. That is one step, of course, a necessary step in the business. You must find, not only that John Loeffert, or George Loeffert & Son, who were the defendants here, but John Loeffert was really the active man, that John Loeffert had devised a scheme to defraud his creditors, but, you must further find, in order to affect this judgment, that Henry Lenz was a party to that scheme, or had knowledge of it, and, as is alleged, assisted in it by furnishing him money to keep going while he was collecting this property. Therefore, the testimony that you must most carefully consider is, not that which proves

that John Loeffert was perpetrating a fraud, but that Mr. Lenz knew of it, or was a party to it. Now what is the testimony in reference to that? That, of course, is a matter that is to be determined, to some extent, by the direct testimony, and, to a certain extent, by applying all of the transactions, both before and after, to the determination of what was the actual fact, as to his knowledge. Mr. Deise says that he and John Loeffert had talked the matter over; John said he could get $100,000 worth of property together, confess judgment to his father-in-law, and that he would keep the creditors out of anything. He further says that matter was talked over by him with Mr. Lenz and with Mr. Wakefield, the attorney in the case; that some of the entries in the books at the close, in order to carry this out, had been made at the instance of Mr. Wakefield, who was acting for Leoffert & Son at that time. That is Deise's allegations.

Mr. Lenz denies that; denies that he ever had any intimation of any such purpose on the part of John Loeffert; that Mr. Deise never spoke to him about it. Mr. Lenz says that Mr. Deise did say to him, in talking about his indorsements, and when he was suggesting that his indorsements ought to be reduced, that Deise said to him he was perfectly safe; that there was plenty of property there; that they were in good condition, but that if anything did happen he would be taken care of. That is what Mr. Lenz says.

As I said before, in my preliminary remarks, it would not be fraudulent for a debtor to say to a creditor, especially an accommodation creditor, "If anything happens I will see that you are protected," because he would have a right to protect him, and, therefore, he would have a right to say so; but if Mr. Deise informed Mr. Lenz of the purpose of John in getting a large amount of property together, and that when that was done he would confess a judgment to him for the purpose of cheating these creditors from whom he had obtained this property, that would be fraudulent. There, it seems to me, is the main point in this case; whether or not you believe Deise that he informed Lenz of John's purpose and his intention to confess a judgment in his favor in order to get possession of the property, because if he did that, if that was done, it would not matter whether the judgment was confessed for the amount that was actually

due, or for which he was liable, which he might honestly confess to him; if it was confessed for the purpose of cheating and defrauding creditors, even though for the actual indebtedness, it would be invalid; it would be a fraud upon creditors which would render the whole transaction void. So that there is the main point, it seems to me, of the testimony, for your consideration.

Now, in corroboration of the one or the other, there is a large amount of testimony that will tend, in your minds, to determine which is telling the truth about that matter. As I have said before, I will not pretend to go over it. You have heard it, you will remember it probably as well as I do, and you heard it fully argued by counsel.

It is claimed, however, that Mr. Lenz is bound by the knowledge of Mr. Wakefield on this subject, and that Mr. Wakefield knew of it. I do not understand that Mr. Lenz would be bound by knowledge of Mr. Wakefield, which was not communicated to him; though he may have been his attorney, if Wakefield was also attorney of Loeffert & Son and knew of the transactions that were being carried on, and was simply employed by Mr. Lenz to take this judgment and enter it up, he would not be bound by any secret knowledge that Wakefield had. But you will observe, further, that Wakefield's knowledge of this intentional fraud is also dependent upon the statement of Mr. Deise, who says that Mr. Wakefield knew all about it. Mr. Wakefield denies that. He testified as to some interviews that took place in the office on one Sunday, the Sunday preceding the confession of this judgment. Wakefield denies that Deise was there at all that day. He says they sent for him but that he did not come; he did not see him. So that there is a direct conflict of testimony between Wakefield and Deise upon that point. Deise is contradicted in reference to this matter, both by Wakefield and Lenz. If, therefore, you would find that Wakefield had this knowledge, you would probably find that Lenz had it, from the same testimony; but even if Mr. Wakefield did have the knowledge of these schemes by John Loeffert, and did not communicate it to Lenz, Lenz would not be affected by that, if his judgment was honestly obtained, and in an honest amount.

Verdict and judgment for defendant. Plaintiffs appealed.

*Error assigned* among others was that the charge was inadequate and one-sided.

*R. B. Ivory*, for appellants.

*D. F. Patterson*, with him *J. A. Wakefield*, for appellee.

PER CURIAM, January 2, 1900:

This was a feigned issue to determine whether a judgment confessed by Loeffert & Son to Henry Lentz was fraudulent. It was a pure question of fact, and was necessarily to be determined by the jury. A large amount of testimony was taken, and as there are no exceptions to the admission or rejection of evidence it must be concluded that each party had the fullest opportunity to lay before the jury every matter of fact which might be considered as likely to affect the result. The learned court below fairly submitted the whole question of fraud to the jury with instructions which, as it seems to us, gave the points of view on either side of the controversy to the jury without bias or unfairness, so far as we can discover. There was a serious conflict of testimony which involved the credibility of witnesses. The court stated fairly what the controverted testimony was, and left its determination to the jury. Nothing else could have been done. We do not discover any error in the answers to the points. The assignments of error are all dismissed.

Judgment affirmed.